UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

GEORGE ESPINOZA,

                    Plaintiff,

                                                    **MEMORANDUM & ORDER**
              v.                                    10-CV-427 (MKB)

WARDEN ZENK, UNIT MANAGER LAMADUE,
UNIT MANAGER GATES, CASE MANAGER
FRANCISO, CASE MANAGER SHAW, JOHN
DOES 1–25, in their individual capacities, and
the UNITED STATES OF AMERICA,

                    Defendants.

-----------------------------------------------------------------x

MARGO K. BRODIE, United States District Judge:

    Plaintiff George Espinoza brings the above-captioned action against the United States of

America for violation of the Federal Tort Claims Act and against various individuals working at

the Moshannon Valley Correctional Center ("MVCC") (collectively, the "MVCC Defendants")

for violations of the First Amendment and the Fifth Amendment. The United States moved to

dismiss the Second Amended Complaint (the "Complaint") pursuant to Rule 12(b)(1) of Federal

Rules of Civil Procedure for lack of subject matter jurisdiction. The MVCC Defendants moved

to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and,

in the alternative, for a transfer of venue to the Middle District of Pennsylvania pursuant to 28

U.S.C. §§ 1391(b)(2) and 1404(a). The Court heard oral argument on Defendants' motions on

January 10, 2013. At oral argument, the Court denied the MVCC Defendants' motion to transfer

venue to the Middle District of Pennsylvania and reserved judgment on the motions to dismiss.

For the reasons set forth below, the Court grants the United States' motion to dismiss and denies the MVCC Defendants' motion to dismiss.

## I.    Background

Beginning on or about July 1, 2004, Plaintiff was housed at the Metropolitan Detention Center ("MDC").[1]  (Compl. ¶ 14.)  While at the MDC, Plaintiff taught English as a second language and earned approximately $60 to $100 per month.  (*Id.* at ¶ 25.)  Plaintiff's earnings and monetary gifts were placed in a commissary account at the MDC.  (*Id.* at ¶ 16.)  He sometimes received monetary gifts from family members, which were also placed in his commissary account.  (*Id.*)  In April or May 2007, the United States Bureau of Prisons ("BOP") "designated Plaintiff to serve his sentence at MVCC in Philipsburg, Pennsylvania."  (*Id.* at ¶ 18.)  Before being transferred, Plaintiff inquired about his funds and was told that the funds would be transferred to the MVCC before his arrival, although he was not told how the funds would be transferred.  (*Id.* at ¶ 20.)

Plaintiff arrived at the MVCC on June 1, 2007.  (*Id.* at ¶ 22.)  Defendant Shaw was Plaintiff's first case manager and gave Plaintiff the pin number for his new commissary account.  (*Id.* at ¶ 23.)  Near the end of June 2007, Plaintiff checked his new commissary account to find that it was empty.  (*Id.* at ¶ 25.)  "Plaintiff asked Shaw why his funds had not yet arrived and was told that his funds would arrive within two months."  (*Id.* at ¶ 26.)  Plaintiff continuously checked his account, but the funds were never deposited.  (*Id.* at ¶¶ 27–28.)  Plaintiff asked Shaw again about his missing funds, but he was told that "his funds were not Shaw's responsibility."  (*Id.* at ¶ 29.)  Plaintiff then asked Defendant Lamadue, his first unit manager, about the funds.  (*Id.* at ¶¶ 30–34.)  Lamadue told Plaintiff that he would make an inquiry, but after six months,

---

[1] The facts alleged in the Complaint are assumed to be true for the purposes of this motion.

Lamadue had failed to provide Plaintiff with any information. (*Id.*) In March 2008, Plaintiff approached Defendant Zenk, the warden of the MVCC, about his funds and was told that his funds were not the only funds that had gone missing. (*Id.* at ¶¶ 35–36.) Plaintiff spent approximately six months asking Zenk about the funds. (*Id.* at ¶ 37.)

In October or November 2008, Plaintiff completed an inmate request form seeking information about his commissary account funds and submitted it to the MVCC. (*Id.* at ¶ 38.) Zenk received Plaintiff's form and gave it to Plaintiff's new case manager, Defendant Francisco. (*Id.* at ¶ 39.) Francisco promised to help Plaintiff obtain information about the funds. (*Id.* at ¶ 40.) In March 2009, Francisco told Plaintiff that "a check had been issued in Plaintiff's name and sent to a street address in Brooklyn, New York." (*Id.* at ¶¶ 42–45.) Francisco provided Plaintiff with copies of the deposited check in the amount of $832.34. (*Id.* at ¶¶ 42–45, Ex. A.) Plaintiff did not live, nor does he know anyone who lived, at the residence where the check was sent. (*Id.* at ¶ 46.) While the endorsed signature on the check purports to be Plaintiff's signature, Plaintiff was incarcerated at the time that the check was mailed and deposited. (*Id.* at ¶¶ 47–52.) Francisco accused Plaintiff of stealing the funds and asked Plaintiff to confirm with his family that they had not deposited the check. (*Id.* at ¶¶ 53–55.) Plaintiff called his family and determined that they had not deposited the check. (*Id.* at ¶ 56.)

Plaintiff asked Francisco to provide him with information on how he could recover the funds. (*Id.* at ¶ 57.) Francisco waited three months before giving Plaintiff information about how he could recover his funds and eventually told Plaintiff to file a Department of Justice Standard Form 95, "Claim for Damage, Injury, or Death" form. (*Id.* at ¶¶ 59–60.) Plaintiff completed the form and mailed his claim to the BOP's regional office. (*Id.* at ¶ 62.) By letter dated July 14, 2009, the BOP denied Plaintiff's claim. (*Id.* at ¶ 63.) Plaintiff renewed his

request, using the BOP's AO943 form. (*Id.* at ¶¶ 67–70.) The renewed request was also denied. (*Id.*) Plaintiff filed various appeals and requests with Zenk, Gates, and the MVCC's then owner and operator, Cornell Companies, which were all denied. (*Id.* at ¶¶ 71–72.)

On October 30, 2009, Francisco called Plaintiff to his office and told Plaintiff that his latest request had been rejected because Plaintiff had filed the incorrect form. (*Id.* at ¶¶ 73–74.) Francisco asked Plaintiff to sign a form accepting responsibility for incorrectly filing his claim. (*Id.* at ¶ 75.) Plaintiff refused to sign such a form.[2] (*Id.* at ¶ 77.) When Plaintiff refused to sign the form, Francisco told Plaintiff to see another case manager. (*Id.* at ¶ 78.) The other case manager determined that Plaintiff had been given the wrong form and gave Plaintiff the correct form. (*Id.* at ¶¶ 81–82.)

That same day, October 30, 2009, Plaintiff was taken out of the general prison population and was placed in the Special Housing Unit (the "SHU").[3] (*Id.* at ¶ 84.) Plaintiff was not told why he was being placed in the SHU. (*Id.* at ¶ 86.) During his transport to the SHU, Plaintiff was momentarily placed outside of Francisco's office and accused Francisco of being responsible for the transfer. (*Id.* at ¶¶ 87–88.) Francisco denied any knowledge of why Plaintiff was being placed in the SHU. (*Id.* at ¶ 89.) However, later that day, when Plaintiff was alone in his cell, Francisco visited Plaintiff and told him that "[w]e want you to drop the grievance." (*Id.* at ¶¶ 93–99.) Francisco also told Plaintiff that he would remain in the SHU until he dropped his grievance. (*Id.*) Plaintiff understood Francisco's threat as being made on behalf of the MVCC Defendants. (*Id.* at ¶ 95.) Plaintiff was held in the SHU for over a month, from October 30,

---

[2] Plaintiff asserts that his claim was denied because Francisco gave Plaintiff the incorrect form to file his claim. (Compl. ¶ 77.)

[3] While in the SHU, Plaintiff was limited to one hour a day of recreation during the weekday, and was required to spend the rest of each day in his cell in isolation. (Compl. ¶¶ 105–107.) Plaintiff was given no recreation time during the weekend. (*Id.*) Plaintiff had previously enjoyed recreation time from 6:00 a.m. to 9:00 p.m. each day. (*Id.*)

2009 to December 7, 2009. (*Id.* at ¶¶ 102–03.) During that time, Francisco visited Plaintiff three to four times a week and asked Plaintiff to drop his grievance. (*Id.*) Plaintiff was not given "an incident report detailing the reasons for his confinement and was not given a hearing to contest his punishment." (*Id.* at ¶ 116.) Plaintiff alleges that "it is MVCC policy and/or practice to provide both an incident report and a hearing during a prisoner's term of confinement in the SHU." (*Id.* at ¶ 117.)

On December 7, 2009, Plaintiff was told by officers from Special Investigation Services' ("SIS") that he was being investigated for gambling. (*Id.* at ¶¶ 113–14.) Plaintiff told the SIS officers that it was impossible that he was gambling since he had no money in his commissary account. (*Id.*) He was then told by the SIS officers that he could return to the general population. (*Id.* at ¶ 115.)

## II. Discussion

### a. Legal Standard

#### i. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Shabaj v. Holder*, 704 F.3d 234, 237 (2d Cir. 2013) (alteration in original) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "'[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (alterations in original) (citations omitted), *aff'd*, 130 S. Ct. 2869 (2010). Plaintiff must prove that subject matter exists "by a preponderance of the

evidence." *Morrison*, 547 F.3d at 170 (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists.  *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010); *Morrison*, 547 F.3d at 170.

### ii.  12(b)(6) Motion to Dismiss for Failure to State a Claim

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."  *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)).  A complaint must, however, "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### b.  Sovereign Immunity

The United States is generally immune from suit.  *United States v. Bormes*, 568 U.S. ---, ---, 133 S. Ct. 12, 16 (2012) ("Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'"  (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992))).  In the Federal Tort Claims Act ("FTCA"), "Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees."  *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008).  However, the FTCA

exempts certain claims from waiver. Section 2680(c) of the FTCA exempts from the waiver of sovereign immunity "[a]ny claim arising in respect of the . . . detention of any goods, merchandise, or other property by any other law enforcement officer[.]" 28 U.S.C. § 2680(c); *see also Ali*, 552 U.S. at 217–18 (discussing this exemption). If this exemption applies, there is no waiver of sovereign immunity, and the court lacks subject matter jurisdiction. *See, e.g.*, *Diaz v. United States*, 517 F.3d 608, 614 (2d Cir. 2008) (holding that the court lacks subject matter jurisdiction because immunity was not waived under the FTCA); *Akeem v. United States*, 854 F. Supp. 2d 289, 295–96 (E.D.N.Y. 2012) (same).

Plaintiff argues that this exemption does not apply because the funds were not "detained" under the meaning of the statute. (Pl. Opp'n 13.) The statute does not specifically define "detention." Plaintiff, therefore, urges the Court to adopt "the ordinary meaning of the word 'detention,'" which Plaintiff defines as "compulsory, forced or punitive containment."[4] (*Id.*) Under this definition, Plaintiff argues that his funds were never detained because he voluntarily gave the funds to the MDC. (Pl. Opp'n 29–30.) The United States argues that the exemption is much broader, and relies on *Ali v. Fed. Bureau of Prisons*, in which the Supreme Court found that the exemption applies to circumstances where funds are accidentally lost by prison officials. (U.S. Mem. 4–7.) For the reasons set forth below, the Court finds that Plaintiff's funds were "detained" within the meaning of the statute.

### i. Dictionary Definition of "Detention"

"Detention" is not defined in section 2680(c) of the FTCA. When a term in a statute is not defined, courts give the term "its ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. ---, ---,132 S. Ct. 1997, 2002 (2012); *see also United States v. Aleynikov*, 676 F.3d 71,

---

[4] Plaintiff cites to various dictionaries from the year the statute was first promulgated in support of his definition of "detention." (Pl. Opp'n 13–30.)

76 (2d Cir. 2012) ("Statutory construction 'must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'").  Ordinary meaning can be discerned by using dictionary definitions.  *See Taniguchi*, 566 U.S. at ---, 132 S. Ct. at 2002.  However, "the dictionary definition of a particular word does not necessarily constitute the beginning and the end of statutory construction."  *Union Carbide Corp. & Subsidiaries v. C.I.R.*, 697 F.3d 104, 107–08 (2d Cir. 2012), *cert. denied*, --- S. Ct. ---, No. 12-CV-684, 2013 WL 1091889 (Mar. 18, 2013).  Where a word is defined multiple ways, dictionary definitions are less helpful and often a court may not discern the meaning of the statute based on the dictionary definition alone.[5]  *United States v. Costello*, 666 F.3d 1040, 1043–44 (7th Cir. 2012).

Plaintiff relies on several dictionaries from the late 1940s, early 1950s and the present, which define "detention" and "detain" as "'withholding,' 'holding back,' 'restraint,' 'delay,' or 'forced delay.'"  (Pl. Opp'n 14.)  Plaintiff asserts that these definitions "all share a common thread in that they all connote acts of compulsion, force or punishment."  (*Id.* at 15.)  The Court has also searched many dictionaries, and unlike Plaintiff, has found that these dictionaries give multiple definitions of detention, many of which *do not* require "compulsion, force or punishment."  For example, the Oxford English Dictionary has five definitions for "detention," including (1) "[t]he keeping back or withholding of what is due or claimed" and (2)"[k]eeping in place; holding in one's possession or control; retention."  4 Oxford English Dictionary 545–546

---

[5]"[I]t makes no sense to declare a unitary meaning that 'the dictionary' assigns to a term. There are a wide variety of dictionaries from which to choose, and all of them usually provide several entries for each word.  The selection of a particular dictionary and a particular definition is not obvious and must be defended on some other grounds of suitability.  This fact is particularly troubling for those who seek to use dictionaries to determine ordinary meaning.  If multiple definitions are available, which one best fits the way an ordinary person would interpret the term?"  *United States v. Costello*, 666 F.3d 1040, 1043–44 (7th Cir. 2012) (citations omitted).

(2d ed. 1989).  The Fourth Edition of Black's Law Dictionary, on which Plaintiff relies, defines

detention as "[t]he act of keeping back or withholding, either accidentally or by design, a person

or thing."  Black's Law Dictionary 536 (4th ed. 1951).  The Ninth Edition of Black's Law

Dictionary, on which Plaintiff also relies, has two definitions of detention:  (1) "The act or fact of

holding a person in custody; confinement or compulsory delay;" and (2) "Custody of property;

esp., an employee's custody of the employer's property without being considered as having legal

possession of it."  Black's Law Dictionary 514 (9th ed. 2009).[6]  Given that detention can occur

by withholding accidentally, the Court cannot state that the definition of detention is uniformly

one of "compulsion, force or punishment."  Instead, there is ample authority in the dictionaries to

find a broader definition of detention — such as to hold in custody.  Therefore, the Court must

look to other sources to determine the definition of detention.

### ii.  Statutory Purpose and Context

In determining statutory construction, courts begin with the statute itself and the statutory

context.  *McNeill v. United States*, 563 U.S. ---, ---, 131 S. Ct. 2218, 2221 (2011); *Shepherd v.

Goord*, 662 F.3d 603, 606 (2d Cir. 2011).  "[T]he general rule [is] that 'a waiver of the

Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the

sovereign[.]"  *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 491–92 (2006).  In the context of the

FTCA, the Supreme Court has held that the "detention of goods" exemption should be read

broadly rather than narrowly.  *Ali*, 552 U.S. at 220–21 (discussing the "expansive" language used

---

[6] The Court has read the definitions of detention in all nine editions of Black's Law
Dictionary and has found that each either has a broad definition of detention or two definitions of
detention.  *See, e.g.*,  Black's Law Dictionary 481 (8th ed. 2004) (definition includes "[c]ustody
of property"); Black's Law Dictionary 459 (7th ed. 1999) (same); Black's Law Dictionary 450
(6th ed. 1990) (defined as "[t]he act of keeping back, restraining or withholding, either
accidentally or by design"); Black's Law Dictionary 404 (5th ed. 1979) ("[t]he act of keeping
back or withholding, either accidentally or by design"); Black's Law Dictionary 569 (3d ed.
1933) (same); Black's Law Dictionary 362 (2d ed. 1910) (same); Black's Law Dictionary 362
(1st ed. 1891) (same).

by Congress in creating the exemption); *Bowens v. U.S. Dep't of Justice*, 415 F. App'x 340, 343 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 170 (2011) ("The Supreme Court has emphasized that the phrasing in § 2680(c) is not intended to limit the waiver exclusion to the excise context; rather, the exception to the general waiver of sovereign immunity 'sweeps as broadly as its language suggests.'" (quoting *Ali*, 552 U.S. at 226)); *Foster v. United States*, 522 F.3d 1071, 1074 (9th Cir. 2008) ("[B]road interpretations of the detention of goods exception to the FTCA comport with the well-established principle that waivers of sovereign immunity must be construed strictly in favor of the sovereign."); *Vitrano v. United States*, 73 Fed. R. Serv. 3d 366, at *10 (S.D.N.Y. 2009) ("[T]he FTCA significantly curbs the government's waiver of immunity. With only limited exceptions, the government preserves its immunity[.]"). *Cf. Adeleke v. United States*, 355 F.3d 144, 154 (2d Cir. 2004) (emphasizing that the exception applies to "any claim arising out of law enforcement officials' detention of goods, including a claim resulting from negligent handling or storage of detained property" (internal quotation marks and alteration omitted) (quoting *Kosak v. United States*, 465 U.S. 848, 854 (1984))); *Carter v. United States*, No. 06-CV-225, 2008 WL 747022, at *2 (D. Vt. Mar. 19, 2008) ("The first question is whether [plaintiff]'s property was 'detained.' The Supreme Court has interpreted this portion of § 2680(c) broadly, holding that it covers damages arising not only from detention of property, but also from negligent storage or handling.").[7]

---

[7] Plaintiff also relies on the legislative history to support his argument that "detention" should be read narrowly. (Pl. Opp'n 17–19.) According to the Supreme Court, "[t]he three objectives most often mentioned in the legislative history as rationales for the enumerated exceptions are: ensuring that 'certain governmental activities' not be disrupted by the threat of damage suits; avoiding exposure of the United States to liability for excessive or fraudulent claims; and not extending the coverage of the Act to suits for which adequate remedies were already available." *Kosak v. United States*, 465 U.S. 848, 858 (1984). The Court is unpersuaded that any of the legislative purposes outlined would be furthered by adopting Plaintiff's restrictive definition of "detention." Furthermore, Plaintiff relies on the theory that based on the

### iii. Legal Precedents

In addition to "reading the whole statutory text, considering the purpose and context of the statute," statutory analysis includes "consulting any precedents or authorities that inform the analysis." *Dolan*, 546 U.S. at 486. In *Ali*, the Supreme Court declined to define "detention." *Ali*, 552 U.S. at 218 ("We assume, without deciding, that the BOP officers 'detained' Ali's property and thus satisfy § 2680(c)'s 'arising in respect of . . . detention' requirement. The Court of Appeals held that the 'detention' clause was satisfied, and petitioner expressly declined to raise the issue on certiorari."). The circuit courts that have been presented with the question of how to define "detention" under the FTCA have defined it broadly.[8] In *Parrott v. United States*,

---

legislative history, the exemption should be limited to "appraisers' warehouses and custom houses." (Pl. Opp'n 18.) However, the Supreme Court has made clear that the exemption applies to all law enforcement officials and not just officials engaged in custom and tax. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227–28 (2008). The Court notes that "[t]he Civil Asset Forfeiture Reform Act of 2000, Publ L. No. 106-185, 114 Stat. 202 ('CAFRA'), amended § 2680(c) to create an exception to the exception, that is, to permit claims against the United States for injury or loss of goods or property in law enforcement custody if the claimant can satisfy four conditions: [including that] . . . the property was seized for the purpose of forfeiture." *Diaz v. United States*, 517 F.3d 608, 613 (2d Cir. 2008). The Supreme Court found "the amendment is relevant because our construction of 'any other law enforcement officer' must, to the extent possible, ensure that the statutory scheme is coherent and consistent." *Ali*, 552 U.S. at 221–22. Congress's creation of the exception to the exemption, using a narrow definition of detention that requires seizure for the purpose of forfeiture, illustrates that the definition of detention is broader than Plaintiff's definition. Plaintiff's definition fits more closely into the narrow exception to the exemption created by the CAFRA amendment than the exemption created by § 2680(c).

[8] Plaintiff relies on the dissenting opinions in *Ali* to support his narrow definition of detention. (*See* Pl. Sur-Reply to U.S. 5.) However, the majority opinion in *Ali* found that the detention exemption applies to many circumstances beyond customs and tax, and the majority's determination precludes the narrow definition that the dissent applied. *Ali*, 552 U.S. at 237 (Kennedy J., dissenting) (stating that "'detention' will be a difficult concept to apply case-by-case under the majority's interpretation of the statute"). Circuit courts have declined to adopt the narrow definition in the *Ali* dissent and instead have adopted a broad definition of detention that mirrors the general purpose of the statute as defined by the majority in *Ali*. *See, e.g., On-Site Screening, Inc. v. United States*, 687 F.3d 896, 898–99 (7th Cir. 2012); *Brown v. United States*,

the plaintiff argued that § 2080(c) did "not immunize the BOP officials . . . because they did not 'detain' the property at issue." 536 F.3d 629, 635 (7th Cir. 2008). The Seventh Circuit rejected this argument, holding that detention applied where BOP officials "took all of [plaintiff's] property, inventoried it, and erroneously told him that he would not be permitted to have it shipped to the new prison." *Id.* at 635–36. The Tenth Circuit relied on the Oxford English Dictionary's definition of detention, which defines "'detention' broadly, as '[k]eeping in custody or confinement,' not as limited to physical handling or restraint." *Brown v. United States*, 384 F. App'x 815, 818 (10th Cir. 2010). Earlier circuit court decisions applied similarly broad definitions of "detention." For example, in *Chapa v. U.S. Dep't of Justice*, the Fifth Circuit followed the Sixth Circuit by defining "detention" under the FTCA as being "generally associated with a period of temporary custody or delay, and not 'seizure,' which is the act of taking possession of property, for example, by virtue of execution or for a violation of the law." 339 F.3d 388, 390–91 (5th Cir. 2003) (citing *Kurinsky v. United States*, 33 F.3d 594, 597 (6th Cir. 1994)).

The Second Circuit has not defined detention. However, the Second Circuit has applied the exemption in circumstances similar to Plaintiff's case. In *Adekoya v. Fed. Bureau of Prisons*, the Second Circuit found that the § 2680(c) exemption applied to a prisoner's claim for recovery of "personal property that was allegedly damaged or went missing while [the plaintiff was] being held in the custody of correctional officers." 381 F. App'x 35, 36–37 (2d Cir. 2010). In *Adekoya*, there is no indication that the plaintiff's property had been taken by compulsion, force or as a form of punishment. *Id.*

District courts in this Circuit have found that the detention exemption applies when goods

---

384 F. App'x 815, 818 (10th Cir. 2010); *Parrott v. United States*, 536 F.3d 629, 635 (7th Cir. 2008).

are held in law enforcement custody.  *See, e.g.*, *United States v. Alcantara*, No. 06-CR-265, 2012 WL 2529602, at *2 (E.D.N.Y. June 29, 2012) (applying the provision to "claims against the United States for injury or loss of goods or property in law enforcement custody"); *Carter*, 2008 WL 747022, at *2 (exemption applies to prisoner's possessions negligently stored).  Courts in other circuits have made similar rulings.  *See, e.g.*, *Rashaw-Bey v. United States*, 341 F. App'x 449, 449–50 (10th Cir. 2009) (holding that the plaintiff's claim "that he lost over $200 worth of property when federal prison officials mishandled his belongings while they were transferring him between prison units" fell under the exemption); *Bramwell v. U.S. Bureau of Prisons*, 348 F.3d 804, 807 (9th Cir. 2003) (holding that because § 2680(c) includes "negligent as well as intentional conduct by government employees" it includes property that was inadvertently and unknowingly taken by law enforcement); *Pinet v. United States*, No. 08-CV-5678, 2010 WL 503022, at *3 (D.N.J. Feb. 8, 2010) ("[A] prisoner's property is detained within the meaning of the FTCA when it is in BOP possession for purposes of a prisoner transfer.").  Based on the dictionary definitions, the purpose of the statute, and the legal precedents, the Court finds that Plaintiff's property was detained within the meaning of the statute.  The United States is therefore immune from suit in this action and its motion to dismiss for lack of subject matter jurisdiction is granted.

### c.  *Bivens* Liability of the MVCC Defendants

In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court created a cause of action under federal common law against violations of the Constitution for persons acting under the color of federal law.[9]  *See Ashcroft v. Iqbal*, 556 U.S. at 675 ("In

---

[9] In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 392–98 (1971), the Supreme Court held that an individual could have a claim for money damages against federal officials for an unreasonable search and seizure in violation of the Fourth Amendment.

*Bivens* — proceeding on the theory that a right suggests a remedy — this Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" (citations omitted)). Because *Bivens* is the creation of federal common law, its application has been limited. *See Dotson v. Griesa*, 398 F.3d 156, 166 (2d Cir. 2005) ("Because a *Bivens* action is a judicially created remedy . . . courts proceed cautiously in extending such implied relief[.]"). "In deciding whether to recognize a *Bivens* remedy, a court must first ask 'whether any alternative, existing process for protecting the [constitutionally recognized] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding' damages remedy." *Minneci v. Pollard*, 565 U.S. ---, ---, 132 S. Ct. 617, 618 (2012) (alterations in original) (citations omitted). Next, "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed . . . to any special factors counseling hesitation before authorizing a new kind of federal litigation." *Id.* (alteration in original) (citations omitted).

Plaintiff brings a *Bivens* claim for violation of his First Amendment rights for being placed in the SHU in retaliation for his grievance[10] and for violation of his Fifth Amendment due

---

[10] Plaintiff has sufficiently pled a First Amendment violation. Plaintiff alleges that he was placed in the SHU to prevent him from filing an administrative grievance against MVCC Defendants because of their handling of his complaint about the missing commissary funds. (Compl. ¶¶ 124–31.) "[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citations omitted); *see also Cox v. Warwick Valley Cent. Sch. Dist.,* 654 F.3d 267, 272 (2d Cir. 2011) (outlining the First Amendment retaliation test). *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (assuming without deciding that *Bivens* applies to First Amendment claims); *Hartley v. Wilfert*, No. 12-CV-1185, 2013 WL 266514, at *6–7 (D.D.C. Jan. 24, 2013) (holding that the plaintiff had stated a *Bivens* claim based on her First Amendment freedom of speech claim).

process rights for being placed in the SHU in violation of MVCC policy and practice. [11] (Compl. ¶¶ 124–137.) The MVCC defendants argue that *Bivens* does not apply to private individuals such as the MVCC Defendants because these individuals may be sued in state court under state tort laws. (MVCC Mem. 3–4.) Plaintiff argues that there are no analogous state law claims for violations of his First and Fifth Amendment rights. (Pl. Opp'n 32–37.) The Court finds that there are no adequate state law remedies and no special factors counsel against applying *Bivens*.

### i. Relevant Supreme Court *Bivens* Precedent

Two Supreme Court cases have dealt with *Bivens* claims arising from inmates in private prisons. *Minneci*, 565 U.S. at ---, 132 S. Ct. at 618; *Corr. Services Corp. v. Malesko*, 534 U.S. 61, 73–74 (2001). In *Malesko*, the Supreme Court held that plaintiff could not bring a *Bivens* action against private prison facilities. 534 U.S. at 73–74. The Supreme Court reasoned that (1) *Bivens* only allows claims against individual officers, and (2) adequate state tort remedies and BOP administrative remedies existed for any claims that Plaintiff had against the private correctional facility. *Id.* The Supreme Court explicitly stated that it was not reaching the question of whether or not *Bivens* actions applied to employees of private prisons. *Id.* at 78–79

---

[11] In order for a prisoner to state a claim for procedural due process, a court "must determine: (1) whether the plaintiff had a protected liberty interest in not being confined . . . and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law." *Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000) (alteration in original) (internal quotation marks omitted) (quoting *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)). Plaintiff alleges that he was placed in the SHU in violation of MVCC procedures. (Compl. ¶¶ 132–37.) These allegations are sufficient to plead a Fifth Amendment due process violation. *See Tellier*, 280 F.3d at 80–83 (holding that the plaintiff had sufficiently pled a *Bivens* claim for a violation of procedural due process when he alleged that he was held in the SHU in violation of BOP policy); *see also Dixon v. Zenk*, No. 05-CV-3127, 2007 WL 2403173, at *1 (E.D.N.Y. Aug. 20, 2007) (holding that the plaintiff had sufficiently pled a *Bivens* claim for violation of his due process rights for being placed in the SHU). *Cf. Davis v. Passman*, 442 U.S. 228, 243–45 (1979) (holding that *Bivens* applies to Due Process Clause claims under the Fifth Amendment).

n.6 ("The Court recognizes that the question whether a *Bivens* action would lie against the individual employees of a private corporation like Correctional Services Corporation (CSC) is not raised in the present case.").  However, the Supreme Court did opine that it would be anomalous for *Bivens* not to reach private correctional facilities but reach their employees.  *Id.* ("It does seem puzzling that *Bivens* liability would attach to the private individual employees of such corporations — *subagents* of the Federal Government — but not to the corporate agents themselves.").  Nevertheless, after *Malesko*, some federal courts have held that *Bivens* actions can be brought against employees of private federal contractors.  *See, e.g.*, *Bender v. Gen. Servs. Admin.*, 539 F. Supp. 2d 702, 708 (S.D.N.Y. 2008) (holding that *Bivens* actions could be maintained against privately contracted security services working for the federal government that "acted under the color of federal law"); *Doe v. Torres*, No. 05-CV-3388, 2006 WL 290480, at *9 (S.D.N.Y. Feb. 8, 2006) (finding that doctor contracted by BOP had "acted under the color" of federal law); *Sarro v. Cornell Corr., Inc.*, 248 F. Supp. 2d 52, 61 (D.R.I. 2003) ("Finding private prison guards to be federal actors within the meaning of *Bivens* also is consistent with the weight of authority holding them to be state actors within the meaning of § 1983.").

More recently, in *Minneci*, the Supreme Court held that *Bivens* actions could not lie against employees of private correctional facilities for their failure to provide adequate medical care to inmate in violation of the Eighth Amendment.  565 U.S. at ---, 132 S. Ct. at 626.  ("For these reasons, where, as here, a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law.").  The Supreme Court

found that the plaintiff's "Eighth Amendment claim focuses upon a kind of conduct that typically falls within the scope of traditional state tort law." *Minneci*, 565 U.S. at ---, 132 S. Ct. at 623. The Supreme Court reasoned that a prisoner in a private-run prison differed from a prisoner in a government-run prison because "[p]risoners ordinarily *cannot* bring state-law tort actions against employees of the Federal Government. *Id.* (emphasis in original) (citations omitted). In contrast, "prisoners ordinarily *can* bring state-law tort actions against employees of a private firm." *Id.* (emphasis in original) (citations omitted). The Supreme Court noted that in California, the plaintiff could bring actions for "negligence," "want of ordinary care or skill," "negligent failure to diagnose or treat," and "failure of one with a custodial duty to care for another to protect that other from unreasonable risk of physical harm." *Id*. (internal quotation marks and citations omitted). Furthermore, the Supreme Court noted that there was "specific authority indicating that state law imposes general tort duties of reasonable care (including medical care) on prison employees in every one of the eight States where privately managed secure federal facilities are currently located." *Minneci*, 565 U.S. at ---, 132 S. Ct. at 624.

The holding of *Minneci* only specifically bars Eighth Amendment claims. For non-Eighth Amendment *Bivens* claims against employees of private prisons, federal courts have declined to find them barred and decided them on the merits. *See, e.g.*, *Shan Wei Yu v. NEOCC*, No. 12-CV-0507, 2012 WL 6705857, at *3 (N.D. Ohio Dec. 26, 2012) (stating that "[w]hile *Minneci* clearly bars Eighth Amendment claims against individual employees of a private prison, it remains unclear whether Fourteenth Amendment claims" are barred and therefore deciding the Fourteenth Amendment equal protection claim on the merits); *Govereh v. Pugh*, No. 12-CV-697, 2012 WL 3683541, at *2 (N.D. Ohio Aug. 22, 2012) (declining to find that the plaintiff's First Amendment claim was barred and deciding them on it on the merits ((collecting cases)); *Murray*

*v. Corr. Corp. of Am.*, No. 11-CV-2210, 2012 WL 2798759, at *2 (D. Ariz. July 9, 2012)

(finding that "Eighth Amendment claims are no longer cognizable under *Bivens*" but allowing

the First Amendment claims to proceed on the merits); *McKaney v. Keeton*, No. 12-CV-148,

2012 WL 1718056, at *3 (D. Ariz. May 15, 2012) ("While *Minneci* bars Plaintiff's Eighth

Amendment claims against individual employees of a private prison, it remains unclear whether

Plaintiff's First Amendment claims are of the type which fall within the scope of traditional tort

law."). *Cf. Baker v. Bannum Place of Saginaw, LLC*, No. 09-CV-10360, 2012 WL 3930122, at

*7 (E.D. Mich. Sept. 10, 2012) ("While *Minneci* definitively bars Eighth Amendment claims

against individual employees of a private prison, it is still unclear as to whether other

constitutional claims, such as those under the First or Fifth Amendment, are of the type that fall

within traditional tort law. Accordingly, the Court will consider Plaintiff's First Amendment

claims on their merits.").[12] In order to determine whether *Bivens* applies to the case at bar, this

Court must consider whether there are adequate state law remedies for Plaintiff's claims against

the MVCC Defendants and whether any special factors counsel against applying *Bivens*.

## ii. Application of *Bivens* Precedent in Plaintiff's Case

The MVCC Defendants contend that intentional infliction of emotional distress and false

imprisonment are possible alternative state law remedies to Plaintiff's Fifth Amendment and

---

[12] A few courts have read *Minneci* expansively and found that it bars all claims against
employees of private prisons. *See, e.g., Vega v. United States*, No. 11-CV-632, 2012 WL
5384735, at *2 (W.D. Wash. Nov. 1, 2012) (dismissing Eighth, First, Fourth and Fifth
Amendment claims "[b]ecause *Minneci* clarified that private employees acting under color of
federal law cannot be held liable under *Bivens*"); *Gapa v. Three Unknown Named Officers of
GEO Group*, No. 12-CT-3083, 2012 WL 3060376, at *2 (E.D.N.C. July 26, 2012) (holding that
*Minneci* bars First Amendment retaliation claims); *Robles v. Stine*, No. 511-CV-109, 2012 WL
3000832, at *1 (S.D. Ga. July 23, 2012) (holding that *Minneci* bars both Eighth Amendment and
First Amendment claims); *Feldman v. Lyons*, 852 F. Supp. 2d 274, 279 (N.D.N.Y. 2012)
(holding that there could be no *Bivens* action against private individual after *Minneci*). However,
the Court notes that if the Supreme Court intended to bar *all Bivens* claims against employees of
private prisons, the Court would have stated so clearly.

First Amendment claims based on his placement in the SHU.[13]  (MVCC Reply 4.)  Plaintiff

argues that false imprisonment is not an adequate remedy because (a) it is unclear if moving

Plaintiff into segregated housing would establish the elements of unlawful detention required

under the Pennsylvania law; and (b) Plaintiff's claim "challenges the lack of procedural

safeguards in connection with his confinement, not its underlying, substantive lawfulness."  (Pl.

Opp'n 36.)  Plaintiff also argues that intentional infliction of emotion distress is not an adequate

remedy because Plaintiff does not allege conduct that "was 'so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized society."  (Pl. Opp'n 36–37 (citing *Hoy v.

Angelone*, 720 A.2d 745, 754 (Pa. 1998))).  "State-law remedies and a potential *Bivens* remedy

need not be perfectly congruent."  *Minneci*, 565 U.S. at ---, 132 S. Ct. at 625.  "Rather, in

principle, the question is whether, in general, state tort law remedies provide roughly similar

incentives for potential defendants to comply with the [Constitution] while also providing

roughly similar compensation to victims of violations."  *Id.*  Using this standard, the Court finds

---

[13] The MVCC Defendants also argue that Plaintiff should be precluded from bringing a claim for loss of his commissary funds because it is a conversion and a negligence claim and not a federal constitutional claim.  (MVCC Reply 3.)  The Complaint appears to bring a *Bivens* action based solely on Plaintiff's placement in the SHU and not on his lost commissary funds. (*See* Compl. ¶¶ 124–137.)  To the extent that Plaintiff is seeking to bring a *Bivens* action based on his lost commissary funds, the Court agrees that such a claim is barred.  *See Adekoya v. Fed. Bureau of Prisons*, 381 F. App'x 35, 37 (2d Cir. 2010) (holding that the plaintiff could not bring a *Bivens* action based on the theory that he was intentionally deprived of his property since the plaintiff "'specifically stated that the circumstances surrounding the alleged violations arose 'out of negligence'" and therefore he could bring a negligence action in state court (alteration and citations omitted)).  In addition, the MVCC Defendants argue that Plaintiff's claim sounds in the Eighth Amendment and not the First Amendment or the Fifth Amendment.  (MVCC Reply 2.) The Court disagrees.  The Complaint appears not to allege that Plaintiff's confinement was cruel and unusual but that it was done in violation of MVCC procedures and in retaliation for Plaintiff's protected speech.  (Compl. ¶¶ 124–137.)  As discussed above in footnotes 9 and 10, Plaintiff's First Amendment and Fifth Amendment claims have been adequately pled.

that intentional infliction of emotional distress and false arrest do not provide "roughly similar" incentives to potential defendants.[14]

First, the Court agrees that the Complaint does not appear to allege the elements of an intentional infliction of emotional distress.[15] *See Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000) ("One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."). Nor does an intentional infliction of emotional distress claim have the same incentives for potential defendants as claims for violations of the Fifth Amendment Due Process Clause and the First Amendment. Intentional infliction of emotional distress claims are aimed at dissuading defendants from engaging in conduct that is outrageous — regardless of the motive for the conduct. *See Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 257 (3d Cir. 2004). Whereas the aim of the First Amendment is to prevent defendants from violating a plaintiff's constitutionally protected right to speak, whether or not outrageous behavior is used, *see Gill v. Pidlypchak*, 389 F.3d 379, 380–84 (2d Cir. 2004), and the Fifth Amendment Due Process Clause protects a plaintiff by requiring that defendants use adequate process before denying or infringing on a plaintiff's right to life, liberty or property, *see Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000).

---

[14] Neither party addresses whether Plaintiff's recovery would be the same under these causes of action, as it would be under a *Bivens* action for violations of the First and Fifth Amendments. (*See* MVCC Mem. 2–4; Pl. 32–27; MVCC Reply 1–5; Pl. Sur-Reply to MVCC Defs. 3–5.) Therefore, the Court does not address this issue.

[15] Since Plaintiff is being held in Pennsylvania, the Court looks to the laws of Pennsylvania to determine if Plaintiff has any viable state claims. *See, e.g.*, *Minneci v. Pollard*, 565 U.S. ---, ---,132 S. Ct. 617, 624 (2012) (applying the state tort law of California because the "claim arose in California" since the plaintiff was imprisoned in California).

False imprisonment is also an inadequate alternative state law cause of action.  The constitutional analog to false arrest and false imprisonment is the Fourth Amendment, not the Fifth Amendment or the First Amendment.[16]  *Bergdoll v. City of York*, No. 11-4353, 2013 WL 1010593, at *3 (3d Cir. Mar. 15, 2013) (finding that false arrest claims arise under the Fourth Amendment and should not be analyzed under the Due Process Clause (quoting *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000))); *Walker v. Sankhi*, 494 F. App'x 140 (2d Cir. 2012) ("False arrest and malicious prosecution are Fourth Amendment claims properly. . . ."); *Pittman v. Metuchen Police Dep't*, 441 F. App'x 826, 828 (3d Cir. 2011) (false arrest and false imprisonment claims arise under the Fourth Amendment).  The purpose of Fourth Amendment false imprisonment and false arrest claims are to prevent defendants from arresting a plaintiff without probable cause.  *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012) (holding that a key element of false arrest is lack of probable cause); *Bell v. City of Harrisburg*, 457 F. App'x 164, 166 (3d Cir. 2012) ("To prevail on a false arrest claim under the Fourth Amendment, a plaintiff must show that the police made an arrest without probable cause.").  Even if improper procedures are used or if the motivating reason for the arrest is the plaintiff's speech, a cause of action for false arrest will not lie if the arresting authority had probable cause to make the arrest.  *See, e.g.*, *Wallace v. Fegan*, 455 F. App'x 137, 140 (3d Cir. 2011) (holding that "the Fourth Amendment is not violated when an otherwise-valid arrest is secured in contravention of a state

---

[16] False imprisonment and false arrest are the same claim under Pennsylvania law.  *Luck v. Mount Airy No. 1, LLC*, No. 12-CV-887, 2012 WL 4747475, at *5 (M.D. Pa. Oct. 4, 2012) (noting that false arrest and false imprisonment are the same); *Pellegrino v. U.S. Transp. Sec. Admin.*, 855 F. Supp. 2d 343, 357 (E.D. Pa. 2012) ("Under Pennsylvania law, the torts of false arrest and false imprisonment are essentially the same actions."  (quoting *Glass v. City of Philadelphia*, 455 F. Supp. 2d 302, 365 (E.D. Pa. 2006))); *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008) ("[F]alse arrest and false imprisonment are essentially the same claim." (alteration in original) (quoting *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999))).

law regulating the intrastate rules of municipal jurisdiction"). Therefore, false arrest does not provide "roughly similar incentives for potential defendants to comply with the [Constitution,]" as *Bivens* claims under the Fifth and First Amendments, and thus, false arrest is not an adequate substitute cause of action.

The Court also finds that no special circumstances caution against applying a *Bivens* cause of action in the present case. "Among the 'special factors' that have 'counsel[ed] hesitation' and thereby foreclosed a *Bivens* remedy are: military concerns, separation of powers, the comprehensiveness of available statutory schemes, national security concerns, and foreign policy considerations." *Arar v. Ashcroft*, 585 F.3d 559, 573 (2d Cir. 2009) (citations omitted); *see also Turkmen v. Ashcroft*, No. 02-CV-2307, 2013 WL 153158, at *27 (E.D.N.Y. Jan. 15, 2013) (citing *Arar* for its special factors analysis). These factors are not present in this case. Plaintiff has sufficiently pled *Bivens* claims against the MVCC Defendants. The MVCC Defendants' motion to dismiss is therefore denied.

## III. Conclusion

For the foregoing reasons, the Court grants the United States' motion to dismiss and denies the MVCC Defendants' motion to dismiss.


SO ORDERED:


_____s/MKB_____
MARGO K. BRODIE
United States District Judge


Dated: March 27, 2013
       Brooklyn, New York